## POWELL v. CITY OF AMARILLO et al.,

### No. 3948.

Court of Civil Appeals of Texas. Amarillo.

Jan. 25, 1933.

Rehearing Denied Feb. 15, 1933.

Harold B. Sanders, of Dallas, for appellant.

Earl Wyatt, of Amarillo, for appellees.

MARTIN, Justice.

The sole question presented by this appeal is the priority of two paving liens assessed against the same property by the city of Amarillo, but on different dates. The first is dated August 30, 1927, and the second September 27, 1927. They are for the benefit of different paving contractors, and arose out of improvements to be made upon two streets abutting upon the same lot. Each assessment purported upon its face to grant and give a prior and first lien.

The trial court gave priority to appellee's lien, which was first in time.

The appellant contends that the last in time is the first in law, and, in the alternative, that no priority be given to either, and that the proceeds from the sale of the property should be prorated.

The question appears to be an original one in Texas. In other states the authorities are in hopeless confusion and contradiction, and any attempt to analyze and harmonize them would be wasted time. The leading cases which sustain appellant's contention are those of Jaicks v. Oppenheimer, 264 Mo. 693, 175 S. W. 972 and Woodill & Hulse Elec. Co. v. Young, 180 Cal. 667, 182 P. 422, 5 A. L. R. 1296. The first is by a divided court, four judges to three, and is in opposition to an earlier decision by the same court. In the California case there was no dissent, but its conclusion is contradicted by language used in the earlier case of Brady v. Burke, 90 Cal. 1, 27 P. 52. The Oppenheimer Case is bottomed upon the reasoning that an assessment is a special tax and is in a class with general taxes. That since the rules of reversed priority apply to the collection of successive general taxes, it must be applied to liens assessed for successive improvements, thus making the first last and the last first. We are not able to agree with this reasoning. To place the paving assessment statute of Texas in a class with that inherent power of sovereignty to levy a tax which is necessary for its existence and perpetuation is to crown it with a superiority and dignity to which, in our opinion, it is not entitled. There is some likeness between the two in the power to create a lien and in its exercise when public necessity requires it, but here the similarity ends. The terms of article 1105b, Vernon's Revised Statutes (Acts 40th Legislature [1927] 1st Called Sess., c. 106, p. 489 [Vernon's Ann. Civ. St. art. 1105b]), which is our present paving statute, are such that candor compels the statement that the private interest of the paving contractor appears to have been given precedence. The validity of such a procedure is upheld upon the theory of benefits to the property and its owner in enhanced value at least equal to the cost of the improvements. This is the specific requirement of the statute and the holding of the courts. Storrie v. Houston, etc., Ry. Co., 92 Tex. 129, 46 S. W. 796, 799, 44 L. R. A. 716. This would be ample protection to the paving contractor, unless such provision is a mere pretense. Notwithstanding the above, there has been granted to a city the right (1) to subordinate all liens, including one even for purchase money, in favor of the paving lien, and (2) the authority is granted to take a personal judgment against the owner of property in favor of the paving contractor, even though the abutting paved property is a homestead. City of Wichita Falls v. Williams, 119 Tex. 163, 26 S.W.(2d) 910, 913, 79 A. L. R. 704. If the above theory is true, the provisions just mentioned have been inserted for the protection of one who needed none.

These are mentioned merely to show that the provisions of this statute relate only in a very small way to matters of public interest, and that this law preponderates with stipulations intended to protect a private contract. It is, of course, true that the power inheres in sovereignty to levy and collect taxes to perpetuate its existence, but to say that the exercise of the powers granted under the statute we have been considering is necessary to the existence and perpetuation of government is too obviously untrue to require any discussion. Moreover, it is specifically held by our Supreme Court that, because assessments for paving are not "taxes" in the

strict sense of that term, homesteads are exempt from their operation. City of Wichita Falls v. Williams, 119 Tex. 163, 26 S.W. (2d) 910, 913, 79 A. L. R. 704. We cannot believe that such right belongs inherently to sovereignty, as seems to be the case with the right to levy taxes generally for the support of the government; nor has it been specifically granted by the Constitution, as is the case with general taxes.

The personal view of the writer is that there should be no priority of liens under assessments for successive improvements, and that the better and more equitable rule would be to make them equal, and require the distribution of the proceeds of the sale of the property ratably between such lienholders. We feel compelled, however, to yield this personal view to what seems to be more logical reasoning and the weight of authority in favor of giving priority to the lien first in time. We take the following quotation from the case of Rankin & Schatzell v. Scott, 12 Wheat. (25 U. S.) 177, 6 L. Ed. 592, by Chief Justice Marshall: "The principle is believed to be universal, that a prior lien gives a prior claim."

 Such has always been the rule under the common law, and such is the rule with regard to statutory liens in the absence of some provision of the statute to the contrary. The Texas statute is silent with reference to the priority of the two liens in question.

"In case of ambiguity, statutes are to be considered with reference to the principles of the common law in force at the time of their passage." 5 C. J. 1039.

At the time of the passage of this statute, a knowledge of the general rule and of the common law will be imputed to the Legislature, and it will be presumed that this law was enacted with full knowledge that priority in time gave priority in law. So construed, we have no difficulty in reaching the conclusion that it was intended that the lien first granted took precedence over all succeeding liens. Such is the undoubted rule with reference to all other statutory liens, and such rule is supported, in our opinion, by the weight of authority in the United States. Herbert C. Heller & Co., Inc., v. Duncan et al., 110 W. Va. 628, 159 S. E. 52; Des Moines Brick Mfg. Co. v. Smith, 108 Iowa, 307, 79 N. W. 77; Brady v. Burke, 90 Cal. 1, 27 P. 52; Parker-Washington Co. v. Corcoran, 150 Mo. App. 188, 129 S. W. 1031; City of Charles City v. Ramsay, 199 Iowa, 722, 202 N. W. 499; Hollenbeck v. City of Seattle, 136 Wash. 508, 240 P. 916; Philadelphia, to Use of Holgate v. Meager, 67 Pa. 345.

Finally we desire to make note again of the provisions of this remarkable statute which strikes down all prior liens, and gives the right to a personal judgment against the property owner under which every dollar of his estate subject to execution may be swept away, upon the theory that the paved property has been enhanced in value to an amount equal to that of the assessment. A presumption so potent against the property owner ought to be sufficient to protect the paving contractor. Common fairness demands that the rule be permitted to work both ways.

So, giving the same effect to this rule against the paving contractor as is given it against the property owner, the conclusion seems irresistible that whatever error the trial court committed was entirely harmless, since theoretically there will be bidders present at the sale of this property who will give not only an amount sufficient to cover both appellant and appellee's claim, but as well the amount of all prior liens. How then can appellant be harmed, whether either or neither theory discussed herein be correct? It is no answer to say adversity has destroyed the value of this property. The property owner cannot raise this question. Why should the other party to the contract be permitted to do so? The voice of the one has been silenced. The law ought to silence the other.

Affirmed.