NICHOLSON *v.* HOLT *et al.*

(*Nashville,* December Term, 1938.)

Opinion filed March 4, 1939.

C. H. RUTHERFORD and McLANE & TAYLOR, all of Nashville, for appellant.

WALKER & HOOKER, of Nashville, for appellee.

MR. SPECIAL JUSTICE EDWARD J. SMITH delivered the opinion of the Court.

The appellant, Irene Nicholson, filed the bill against David Holt, Adline Richardson, and Baxter Cato, administrator of the estate of her father, John W. Holt, deceased.

After a hearing in the Court below, on the bill, the answer, and a stipulation of facts, the Chancellor dismissed

the bill, and the appellant prayed and perfected an appeal to this Court.

Irene Nicholson, David Holt, and Adline Richardson are the only children of John W. Holt, and his first wife, Amanda Holt, who died intestate in Davidson County, Tennessee, on July 9, 1902.

In 1909 John W. Holt married his second wife, Mrs. Ella Day Holt, who died on January 11, 1937, and John W. Holt died testate in Davidson County, Tennessee, on June 24, 1937.

On January 28, 1911, he executed a will, the only part of which relevant here, is item two, which reads as follows:

"2. I give and devise to my daughters, Mrs. Irene Nichols, wife of Bud Nichols, and Mrs. Addie Henderson, wife of Luther Henderson, Twenty-five ($25.00) Dollars each as their full share in my estate, which I direct to be paid out of my personal estate; the rest and residue of my personal estate I give, devise and bequeath absolutely to my wife, Ella Holt, to use and enjoy, control and dispose of in any way she may see fit and proper, and I also give and devise to my said wife, Ella Holt, a life estate in all the real estate of which I shall die seised and possessed with absolute control thereof for and during her natural life, together with all the rents, profits, and income therefrom, to use and enjoy and dispose thereof as she may see fit and proper, and at her death the remainder interest therein, I give, grant, and bequeath absolutely in fee to my son, David Rudolph Holt, to use and enjoy and to dispose thereof in any manner that may to him seem fit and proper."

The will was probated in the County Court of David-

son County on June 28, 1937, and Baxter Cato was appointed and qualified as administrator of the estate.

The bill, filed on December 22, 1937, alleges, that as item two of the will, above quoted, failed to take effect, John W. Holt died intestate, and that each of his three children is entitled to a one-third undivided interest in his real and personal property as his heirs-at-law and distributees.

It is conceded that he died intestate as to his personal estate, and that the same will be divided equally among his three children.

As to the real estate, it is the contention of the appellant, that as the life tenant, Ella Holt, predeceased the testator, the remainder devised by the second item of the will to David Holt, was destroyed because it had no particular estate to support it.

This contention cannot be sustained.

On the death of the life tenant, Ella Holt, before the death of her husband, the remainder in fee, devised to David Holt, was accelerated, and took effect in possession on the death of the testator.

The doctrine of acceleration of remainders is based upon the presumed intention of the testator to devise the property in remainder from and after the determination of the preceding estate, and not from and after the death of the life tenant. It proceeds upon the supposition that though the ulterior devise is in terms not to take effect in possession until the decease of the prior devisée, yet, in point of fact, it is to be read as a limitation of a remainder to take effect in every event which removes the prior estate out of the way.

In 3 Washburn on Real Property (6 Ed.), Section 2449, the applicable rule is stated as follows:

"If an estate be devised to A. for life with a remainder over, after his death, to B., and A. die in the lifetime of the testator, the estate will go directly to B. upon the death of the testator; the lapsing of the devise to A. in this case, leaving the will to take effect as if it had not been contained in it."

In 1 Tiffany on Real Property (2 Ed.), Section 146, p. 521, it is said:

"And in the case of a devise to one for life or in fee tail with remainder over, if the devisee of the particular estate dies before the testator, the remainderman is immediately entitled to possession upon the testator's death."

In support of the statement quoted, the author cites in note 89, English and American cases, among them, *Brice* v. *Horner*, Tenn. Ch. App., 38 S. W., 440, 442.

In the course of the opinion in that case, the Court said:

"We do not understand the law to be that, if a gift or devise be made to A. for life, remainder to B., and A. dies before the testator, the gift or devise lapsed. The great amount of the English authorities is the other way. Vide 13 Am. & Eng. Enc. Law, p. 31, authorities in note 2. And the great weight of authority in this country is the same. Id., p. 32, and note 1, and authorities there cited; 4 Kent, Comm. 236. In *Hardwick* v. *Thurston*, 4 Russ., 381, a gift was made for life to a daughter, with a power of appointment and in default of appointment to her next of kin. The daughter died in the lifetime of the testator, having made no appointment and having a child. The court held there was no lapse, saying the case was the common one of the death of the life tenant

before the death of the testator, and that the remainder over took effect upon the death of the testator.''

In 23 Ruling Case Law, Section 103, it is said:

''It is the general rule, that, in the absence of a controlling equity or of an express or implied provision in the will to the contrary, where an estate is given to a person for life, with a vested remainder in another, the remainder takes effect in possession whenever the prior gift ceases or fails in whatever manner. The death of the life tenant before that of the testator simply accelerates the time when the devise over becomes operative.''

The assignments of error based on the first contention of the appellant are overruled.

■■ By a decree entered in the Chancery Court of Davidson County on January 14, 1902, affirmed on appeal by the Court of Chancery Appeals in December 1904, Amanda Holt, the mother of the appellant, was granted a decree of absolute divorce from her husband, John W. Holt, the decree providing that commissioners set apart a homestead right, including the dwelling, of the value of one thousand dollars, and that the title be vested in Amanda Holt for life with remainder in her three children, Irene Holt, David Holt, and Adline Holt.

Amanda Holt died on July 9, 1902, but the cause was not revived, and the decree directing that a homestead right be set apart was not executed.

The alternative prayer for relief is that the Court order the one hundred thirty acre tract of land, on which her father resided, sold, and out of the proceeds of sale, the sum of one thousand dollars, the value of the homestead right, as decreed in the case of *Holt* v. *Holt*, be divided equally among the appellant, her brother, David Holt, and her sister, Adline Richardson, and that the ad-

ministrator of the estate of John W. Holt be held accountable for the fair rental value of the homestead right and of the entire tract of land.

After the death of her mother, the appellant lived with her father until 1904 when she married and moved to a farm about a mile distant from her father's place.

The appellant, who was fifty years of age, at the time the stipulation was made in this cause on December 6, 1938, and who became of age on December 25, 1909, never attempted to have the decree of the Chancery Court, in the case of *Holt* v. *Holt,* entered in 1902, setting apart a homestead, revived and executed until she filed the bill in this cause on December 22, 1937.

In an effort to explain and excuse this extraordinary delay, the bill alleges, in substance, that while she lived with her father as a member of his household, and he was her natural guardian, "she would naturally hesitate to institute court action against him," and it is further alleged that due to these reasons, "she was loath to institute any kind of legal proceeding against him during his lifetime."

It thus appears that for twenty-three years after she became of age, the appellant took no steps to enforce any rights she might have had to a homestead, but suffered her father to remain in unmolested possession of the land, use it for farming purposes, and pay all taxes assessed against it.

The stipulation, in part, provides:

"That John W. Holt was the original owner of the land described in the bill and continued as such owner until his death on June 24, 1937, subject however, to the rights, if any of complainant; by reason of the decrees

hereinafter referred to, of the Chancery Court and the Court of Chancery Appeals in the case of *Holt* v. *Holt.*"

Relying on the reservation contained in the above quoted excerpt, counsel for appellant insist that the possession of the land by her father was not adverse, to the claimed homestead right, despite the fact that by the amended stipulation it was agreed that defendants' answer stand amended so as to plead adverse possession and the seven year Statute of Limitations, and further that her suit is not barred by laches.

It is abundantly clear that her father was justified in believing that no effort ever would be made to revive and execute the decree entered in 1902.

In view of the foregoing facts, the only reasonable inference which can be drawn is that the appellant waived whatever right, if any she had, to an interest in the homestead, and further any such right was barred by the adverse possession of her father, and the seven year Statute of Limitations (Code 1932, Section 8582).

Clearly her delay was prejudicial in that her father paid all taxes assessed against the property, from the date he acquired title, prior to 1902, until the date of his death on June 24, 1937, and it is prayed that his administrator render an account for the fair rental value of the homestead right, and the entire tract of land.

■ It is fundamental that equity will not lend its aid to one, who, after the lapse of many years, seeks to assert a right, when the party against whom the relief is prayed, has reasonable cause to assume, and acts on the assumption, that the right has been waived.

The doctrine of laches, as defined by *Lindsay Petroleum Co.* v. *Hurd,* L. R., 5 P. C., 221, is applicable here.

In that case the Court said:

"The doctrine of laches in courts of equity is not an arbitrary or technical doctrine. Where it would be practically unjust to give a remedy, either because the party has, by his conduct, done that which might fairly be regarded as equivalent to a waiver of it, or where, by his conduct and neglect, he has, perhaps, not waiving that remedy, yet put the other party in a situation in which it would not be reasonable to place him if the remedy were afterward to be asserted, in either of these cases, lapse of time is most material."

It results that the decree of the Chancellor dismissing the bill is affirmed at the costs of the appellant.