LESLIE J. LOAR, SR., *etc.*

*v.*

JEANNE MASSEY, *et al.*

(No. 14163)

Decided December 18, 1979.

*LaVerne Sweeney* for Ruth Ann Welch.

*Steptoe & Johnson, Anne R. Williams* for Jeanne Massey.

HARSHBARGER, JUSTICE:

This appeal is from a declaratory judgment by the Circuit Court of Taylor County construing the will of Ole

E. Wyckoff. Executor Leslie J. Loar, Sr., brought the action against the beneficiaries of the will, Jeanne Massey and Bradley Wyckoff Anderson, appellees herein, and Ruth Ann Welch, appellant. He sought construction of the following provision:

"I give, devise and bequeath to Ruth Ann Welsh [sic] for her lifetime only, all of my personal property now consisting of cash in hand in several accounts, stocks, bonds, household goods and furniture, automobile, and the right to Miss Welsh [sic] to consume as much thereof as may be necessary to keep her in health during her lifetime, and at her demise the property remaining shall pass to my granddaughter Jeanne Massey and my grandson, Bradley Wyckoff. . . ."

The executor specifically asked the court to decide: a) what is meant by the phrase "may be necessary to keep her in health"; b) did the testator, by said provision, in fact, set up a trust; c) if a trust was intended, how would the trustee execute it; d) if a trust were not created, would plaintiff disburse all personal property to Ruth Ann Welch and if so, to whom would the beneficiary account for her expenditures from said assets; and e) upon her death, how would the assets remaining in the estate be accounted for and delivered to the other defendant heirs, considering that the will provides for a trustee to administer the fund for Bradley Wyckoff Anderson until he attained his majority.[1]

By order of November 17, 1975, the court found that testator intended that his personalty be placed in trust, ordered the assets put in trust for the three beneficiaries subject to restrictions to be set later, and appointed The Blueville Bank of Grafton, trustee. This order was

---

[1] The will stated in part: "I Ole E. Wyckoff . . . give, devise and bequeath . . . a one-third to the trustee Leslie J. Loar for Bradley Wyckoff, the son of Bailey, deceased, Mr. Loar shall have exclusive power to decide the amount and purpose of money disbursed to Bradley during Bradley's minority and whether any sum shall be disbursed prior to final settlement with him. . . ."

entered after having been endorsed by counsel for all parties, "Approved."

On June 28, 1977, the court entered a second order which further construed testator's will and which found that testator had granted to Welch a life estate in the personalty with a limited power to consume, and to Massey and Anderson vested remainders subject to defeasance; which set restrictions upon Welch's limited power to invade the trust principal; which specified duties and powers of the executor and trustee in administering the estate; and, which provided that Welch was not entitled to the income from the "trust" until after the estate was settled. This order was signed by counsel for all parties as "Approved as to form only."

Appellant claims: 1) "the Circuit Court erred in deciding Ruth Ann Welch was not entitled to the income from the personal property of Ole E. Wyckoff until the final settlement of the estate was approved by Taylor County Commission; 2) the Circuit Court erred in restricting Ruth Ann Welch's power to invade the personal property of Ole E. Wyckoff to a time she basically proved she was destitute; 3) the Circuit Court erred in deciding the language of Ole E. Wyckoff's will showed an intent to imply that the personal property was to be placed in trust; and 4) the Circuit Court erred in not deciding that Ruth Ann Welch was given a fee simple ownership of Ole E. Wyckoff's personal property."

I.

The order of November, 1975, establishing the trust which is the subject of Welch's third assignment, was entered after having been approved by her counsel. If she objected to the court's construction of testator's will to intend a trust, she should have then excepted. Not now.

This Court has held consistently that no appeal lies from a consent decree. *Hunter v. Kennedy*, 20 W. Va. 343 (1882), *Rose & Co. v. Brown*, 17 W. Va. 649 (1881), *Manion v. Fahy*, 11 W. Va. 482 (1877). In fact an erroneous de-

cree, consented to, is not appealable. *Herbert C. Heller & Co. v. Duncan*, 110 W. Va. 628, 159 S.E. 52 (1931); 69 A.L.R.2d 781 (1960).

The practice prevailing in the United States Supreme Court as to a litigant's right to appeal from judgment by consent was described in *Swift & Co. v. United States*, 276 U.S. 311, 48 S.Ct. 311, 72 L.Ed. 587 (1928) as follows:

> Under the English practice a consent decree could not be set aside by appeal or bill of review, except in case of clerical error. . . . In this Court a somewhat more liberal rule has prevailed. Decrees entered by consent have been reviewed upon appeal or bill of review where there was a claim of lack of actual consent to the decree as entered . . . or of fraud in its procurement . . . or that there was lack of federal jurisdiction because of the citizenship of the parties. . . . But 'a decree, which appears by the record to have been rendered by consent, is always affirmed, without considering the merits of the cause.' [Citations omitted] [276 U. S. at 323-324]

In *Kelly v. Winkler*, 351 Ill. App. 145, 114 N.E.2d 335 (1953), an appellate court of Illinois, considering an appeal from an order which had been "O.K.'d" by appellant's counsel, dismissed the appeal thusly:

> The law is plain that there can be no appeal from a consent judgment. [Citations omitted] To permit appeals after a final order has been O. K.'d or approved by the party appealing opens the way to imposition on the trial judge and opposing counsel. If as stated in the Edelman case, supra, it was the purpose of the attorney to expedite an appeal, an approval of the order as to form would have accomplished all he wanted. Where an order is presented to a trial court with the unqualified approval of the party injured by the order, the court is not as apt to examine the order as carefully as he would if it were presented without such approval. In the instant case we are satisfied that the able and careful trial judge would not have entered the order before us in its

present form if he had not believed that it was an agreed order. In addition, opposing counsel may be misled into failing to protect his record by an unqualified approval of a final order by the opposing party. [*Id.* at 147, 114 N.E.2d at 336]

The principal that the merits of the adjudication being appealed will not be reviewed if consented to, controls. *See, United States v. Allegheny-Ludlum Industries, Inc.*, 517 F.2d 826 (5th Cir. 1975), *cert. denied, sub nom.* 425 U.S. 944, 96 S.Ct. 1634, 48 L.Ed.2d 187 (1976); *Harold's Trucking v. Kelsey*, 584 P.2d 1128 (Alaska 1978); *State v. Huebner*, 230 Ind. 461, 104 N.E.2d 385 (1952); *Gallup Trading Co. v. Michaels*, 86 N.M. 304, 523 P.2d 548 (1974); 4 Am. Jur.2d *Appeal and Error*, §§ 116, 243.

There is a broader rule underlying the holdings above: objections on non-jurisdictional issues, must be made in the lower court to preserve such issues for appeal. *Shackleford v. Catlett*, W. Va., 244 S.E.2d 327 (1978); *Wheeling Dollar Savings & Trust Co. v. Leedy*, W. Va., 216 S.E.2d 560 (1975).

The Syllabus by the Court in *State v. Cruikshank*, 138 W. Va. 332, 76 S.E.2d 744 (1953), decided under provisions of *W. Va. Code*, 56-6-35 held that " 'A writ of error to an order of a trial court, to which no objection or exception has been taken, will be discharged as having been improvidently awarded.' Point 1, Syllabus, Baker v. Gaskins, 124 W. Va. 69."

Rule 46 of the West Virginia Rules of Civil Procedure, while liberalizing the strictures of *Code*, 56-6-35 and common law pleading regarding formal exceptions, requires "... that a party, at the time the ruling or order of the court is made or sought, makes known to the court the action which he desires the court to take or his objection to the action of the court and his grounds therefore. ..."

In *Konchesky v. S. J. Groves and Sons Co.*, 148 W. Va. 411, 414, 135 S.E.2d 299, 302 (1964) this Court in construing Rule 46 wrote: "[I]t has always been necessary for a

party to object or except in some manner to the ruling of a trial court, in order to give said court an opportunity to rule on such objection before this Court will consider such matter on appeal." *See also: State Road Commission v. Ferguson,* 148 W. Va. 742, 137 S.E.2d 206 (1964); *"Automatic" Sprinkler Corp. of America v. Coley & Petersen, Inc.,* ___ Va. ___, 250 S.E.2d 765 (1979) (construing Supreme Court Rule 5:21).

In this case, no objection was made to the order; moreover, it was approved without reservation. Therefore we do not review the issue arising therefrom, the imposition of a trust, because it was waived.

Because the court's second order was "approved only as to form," Welch's first, second and fourth assignments arising therefrom are properly before us.

## II.

Welch alleges in her fourth assignment that the court erred in finding that she was given a life estate in testator's personalty and not fee simple ownership of it. Upon this we scarcely need comment: what else could "I give, devise and bequeath to Ruth Ann Welsh for her lifetime only, all of my personal property. . . ." mean? An estate "which is specifically described as to duration in terms of the life or lives of one or more human beings, and is not terminable at any fixed or computable period of time" is defined as an estate for life, *Restatement of Property,* § 18 (1936), which estate is to be held by the life tenant for the life so designated in the devise or bequest and not beyond that period, *Weekley v. Weekley,* 126 W. Va. 90, 27 S.E.2d 591 (1943).

Welch contends she was in effect granted fee simple ownership because her life estate is coupled with a power to consume, citing cases which held that a *general power* of disposal of property following a life estate expresses an intent to give a fee simple estate. This rule has been specifically abrogated by *Code,* 36-1-16[2] in ef-

---

[2] *W. Va. Code,* 36-1-16. Interest in property coupled with power of disposal.

fect as of the date of death of Ole E. Wyckoff and presently in effect. *See In re Estate of Evans*, 156 W. Va. 425, 194 S.E.2d 379 (1973); *Swan v. Pople*, 118 W. Va. 538, 190 S.E. 902 (1937). Moreover, the rule prior to its abrogation, applied only to grants of general or unlimited powers to use, dispose, or consume, while the power under consideration here has been clearly limited to so much "thereof as may be necessary to keep her in health during her lifetime. . . ." The remaindermen's interests vested at the time of testator's death, subject to defeasance only to the extent to which the limited power in the preceding life estate is exercised. The remainders are not contingent. *Price v. Talkington*, 126 W. Va. 263, 27 S.E.2d 705 (1943).

The lower court's interpretation of testator's language quoted hereinabove is also at issue in Welch's second assignment, which is that the court erred in restricting Welch's power to invade the personal property to a time she proved she was destitute.

The order provides in this regard that testator intended by the language employed in his grant of a limited power to consume, that the power "be exercisable only when Ruth Ann Welch could establish that such amounts were actually needed by her to cover expenses necessary for the maintenance of her health, including

---

If any interest in or claim to real or personal property be given by sale or gift inter vivos or by will to one, with a limitation over either by way of remainder or of executory devise or any other limitation, and by the same conveyance or will there be conferred, expressly or by implication, a power upon the first taker in his lifetime or by will to use or dispose absolutely of such property, the limitation over shall not fail or be defeated except to the extent that the first taker shall have lawfully exercised such power of disposal. The proceeds of a disposal under such power shall be held subject to the same limitations and the same power of use or disposal as the original property, unless a contrary intent shall appear from the conveyance or will: Provided, however, that a trust deed or mortgage executed by such first taker shall not be construed to be an absolute disposal of the estate thereby conveyed unless there be a sale thereunder, but shall be effective only to the extent of the lien or encumberance created by such trust deed or mortgage.

expenses for food, clothing, medicine, doctor's services, and hospital care, and which expenses she could not pay otherwise." The trustee was directed to pay the net income from the trust to appellant each month for her lifetime and to "pay to or apply for the benefit of [appellant] during her lifetime such amounts from the principal of said trust as [she] can establish, upon the conditions and in the manner hereinafter prescribed by this Court, as necessary to maintain her health." The conditions prescribed are:

> And it is further ADJUDGED, ORDERED and DECREED that Ruth Ann Welch shall exercise her limited power of consumption and The Blueville Bank of Grafton, as Trustee, shall pay over to or expend for the benefit of Ruth Ann Welch part or all of the principal comprising the trust estate as aforesaid only upon the establishment by an affidavit duly executed by said Ruth Ann Welch, which affidavit must establish to the satisfaction of The Blueville Bank of Grafton the following facts: That the funds so requested are needed by Ruth Ann Welch to meet expenses for food, clothing, medicine, doctor's services and hospital care; that said expenses are reasonable and are necessary to sustain the health of Ruth Ann Welch; that all of the income of Ruth Ann Welch from whatever source, including income derived as life beneficiary of the estate of Ole E. Wyckoff, received prior to her request has been expended; and that Ruth Ann Welch is not entitled to any additional income from any source which she can reasonably expect to receive within time to meet the obligations and expenses which are the subject of her claim to invade the corpus. And in connection with the establishment of the aforesaid facts, it is further ADJUDGED, ORDERED and DECREED that, upon request by The Blueville Bank of Grafton, Ruth Ann Welch shall furnish evidence reasonably establishing her need to invade the corpus of said trust estate and the proper purpose for said invasion, including, but in no way limited to, (a) affidavits from individuals or organizations cog-

nizant of the facts surrounding any claim establishing the necessity of such claim, and giving an itemized account of what food, clothing, medicine, doctor's services or hospital care services shall be met by said claim, and when such expenses for food, clothing, medicine, doctor's services and hospital care are due and owing; (b) the originals of vouchers or bills for such expenses as aforesaid, provided, however, that upon the showing of good cause satisfactory to The Blueville Bank of Grafton, copies of said vouchers or bills may be presented; (c) any and all bank statements; (d) all accounts furnished in connection with any trusts; (e) all federal or state income tax returns, provided, however, that The Blueville Bank of Grafton may require any or all of such federal or state income tax returns to be certified by the appropriate agency but said The Blueville Bank of Grafton shall bear the cost of obtaining any such certified returns.

There is no case in West Virginia or any other jurisdiction construing "to keep her in health." Courts have interpreted various powers of consumption concerned with health-related needs, (for example, in case of serious illness; for sickness or hospitalization; by reason of accident or sickness; for medical attention), and have usually construed such provisions narrowly to permit invasion for mental and physical ailments only. *See, e.g.*, *In re Will of Pickford*, 213 N.Y.S.2d 515 (1961); *In re Woodin's Estate*, 186 Misc. 857, 65 N.Y.S.2d 630 (1945); *Republic National Bank of Dallas v. Fredericks*, 155 Tex. 79, 283 S.W.2d 39 (1955).

In will construction, courts "must give to the words employed their common and ordinary meaning . . . ." *Hedrick v. Hedrick*, 125 W. Va. 702, 709, 25 S.E.2d 872, 877 (1943). The court below has defined "as may be necessary to keep her in health" to include expenses for food, clothing, medicine, doctor's services, and hospital care. Absent authority otherwise, we cannot hold this definition to be error.

Nor do we find error in the court's ruling that "as may be necessary to keep her in health" requires proof of necessity before Welch may apply to the trustee for distributions from principal. This requirement is consistent with our holding in *Emmert v. The Old National Bank of Martinsburg*, W. Va., 246 S.E.2d 236 (1978), interpreting a testamentary trust provision granting principal distributions for "comfort and support" of testator's sons "if necessary any time." The Court wrote that there were two prerequisites for invasion of the principal: first that there must be some necessity for making the distribution, and second, that the amount of such must be limited to that which adequately provided "comfort and support." The situation here is analogous.

In *Emmert* we held that the necessity requirement makes invasion of the trust principal possible only after exhaustion of other resources. When a gift is of income, "coupled with a provision that the principal may be invaded in case of need, the private income of the beneficiary must be considered in determining whether such need exists." *Id.* at 241, quoting *Re Martin's Will*, 269 N.Y. 305, 199 N.E. 491 (1936).

Welch must need to invade the trust principal for her health. The lower court so ordered and provided procedures for her to follow in applying for distributions and described the kinds of documents she must supply to the trustee to prove her need and lack of resources to meet it. While the lower court was not required to define the procedure for trust administration so precisely, it is surely not error for it to do so. In fact, the court's precision may have avoided future litigation in the vein of *Emmert*, about what Welch is required to show before the trustee would distribute any principal to her. As Justice Neely wrote in *Emmert*, "professional trustees are reluctant to make discretionary decisions because of potential liability and usually prefer to follow, in normal bureaucratic style, the safest of all paths." *Id*, n. 3 at 243.

## III.

Welch also questions when the income from the estate becomes payable to her.

She is entitled to receive all income for the estate upon the happening of two events: 1) one year after the qualification of the first executor, which has occurred, and 2) when the commissioner of accounts report has been confirmed. *Code*, 44-2-24. If the estate has not been settled or confirmed, or the personal representative has failed to pay her within three months of the confirmation, she is not without remedy. *See, Code*, 44-4-22.

The appellant, as a legatee of income, is entitled to all income produced by the estate from the date of the testator's death, unless the will provides otherwise. This rule is applicable to legacies in trust, *Restatement of Trusts*, 2d § 234 (1959), and appellees so concede. Therefore the provision of the lower court's order of June 28, 1977, which directs the executor to add the accrued interest to the corpus of the estate before releasing the estate to the trustee is in error, and shall be amended to provide that all accrued interest shall be paid to Welch, the income beneficiary, when the estate is settled.

*Affirmed in part,
reversed in part.*